UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-CV-21066-SCOLA/GOODMAN

EDUARDO MARRERO,

      Plaintiff,

v.

KIOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS

      This case challenges a denial of social security benefits. Plaintiff Eduardo Marrero and Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 22; 23]. The Commissioner's summary judgment motion also served as her opposition response to Marrero's motion. [ECF No. 24]. Marrero did not file a response to the Commissioner's summary judgment motion; however, he did file a reply [ECF No. 26], which addresses the Commissioner's summary judgment arguments in the same

---

[1]     Plaintiff's initial suit was brought against Andrew Saul, the Acting Commissioner at the time of filing. Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted for Andrew Saul as the suit's Defendant.

manner a response would.[2]

According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 2].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Marrero's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter a final judgment in favor of the Commissioner.

I.      **Procedural Background**

On October 11, 2018, Marrero protectively filed a Title II application for a period of disability and disability benefits, and a Title XVI application for supplemental security income. (R. 222-254).[3] The Commissioner denied the application initially and on reconsideration. (R. 104-05; 136-37). After a hearing on June 10, 2020 (R. 40), Administrative Law Judge Lornette Reynolds (the "ALJ") concluded that Marrero was not disabled. (R. 32). The Appeals Council denied review of the ALJ's decision. (R. 1-3).

---

[2]      The Undersigned's Scheduling Order states that "Plaintiff **shall** respond to Defendant's motion for summary judgment and may reply to Defendant's response to his motion for summary judgment." [ECF No. 16] (emphasis in original). Although Marrero's reply is identified as only a reply, it achieves the same purpose as a response and the Undersigned will consider the arguments in the reply as responsive to the Commissioner's independent summary judgment motion.

[3]      Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 19].

The matter is now ripe for review.

## II.     Factual Background

Marrero was forty-eight years old on the alleged onset date of September 28, 2018. (R. 222). Marrero has a GED and last worked in either 2016 or 2017. (R. 48). Before he stopped working, Marrero spent more than twenty-five years in construction, working eight hours a day, five days a week. (R. 294). His duties required him to operate heavy equipment, lay pipe, and load materials. (R. 48-50).

Marrero alleged disability due to varicose veins of left lower extremity with ulcer of ankle, choric ulcer of left ankle, viral hepatitis C, cannabis abuse, atherosclerosis heart disease of native coronary disease, hypertension, hyperlipidemia, and bipolar disorder. (R. 293). At the hearing, Marrero testified that he is no longer able to work because he can't sit in a chair or stand for too long before his legs begin swelling, causing him pain and weakness. (R. 55).

## III.    Applicable Legal Standards

### A.     *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1.    **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2.    **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3.    **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine the claimant's residual functional capacity ("RFC"); and then determine:

4.    **Step four**. Based on the RFC, can the claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5.    **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the

Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

## IV.    The ALJ's Findings

In denying Marrero's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims. (R. 18-32). At step one, the ALJ concluded that Marrero had not engaged in substantial gainful activity since September 28, 2018, the alleged onset date. (R. 20).

At step two, the ALJ concluded that Marrero has the following severe impairments: varicose veins in both lower extremities; venous insufficiency; hypertension; unspecified bipolar disorder; and generalized anxiety disorder. *Id*.

At step three, the ALJ concluded that, Marrero did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, also stating that he did "not meet nor medically equal the criteria of Cardiovascular System section 4.00 *et seq*." (R. 21). Next, the ALJ determined that

Marrero has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs; occasionally climb ladder[s], ropes or scaffolds; and frequently stoop, kneel, crouch, and crawl. Environmentally, he has to avoid work at unprotected heights and with dangerous machinery; and can have no concentrated exposure to heavy vibrations. The claimant can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. He can deal with problems involving few concrete variables in or from standardized situations. The claimant is able to respond appropriately to supervision, co-workers and usual work situations; and can interact appropriately with the public on routine matters.

(R. 24).

At step four, the ALJ concluded that Marrero is not capable of performing any of his past relevant work. (R. 30).

Finally, at step five, the ALJ found that there are jobs existing in significant numbers in the national economy that Marrero can perform, including cleaner (housekeeping), bottling-line attendant, and bagger. (R. 32). Accordingly, the ALJ found that Marrero has not been under a disability, as defined in the Social Security Act, from September 28, 2018, through the date of her decision. *Id*.

## V.    Analysis

Marrero advances three separate grounds for remanding his case to the ALJ: (1) "The ALJ committed reversible error in failing to address whether Listing 4.11, pertaining to chronic venous insufficiency, was met or equaled"; (2) "The ALJ's reasons for finding

the opinion of ARNP Vasquez to be unpersuasive are not supported by substantial evidence"; and (3) "The ALJ's reasons for not crediting the testimony of Mr. Marrero are not supported by substantial evidence." [ECF No. 22]. The Commissioner's response is generally that Marrero failed to meet his burden to prove he is disabled, the ALJ's decision is based on substantial evidence, and Marrero is seeking to have this Court impermissibly reweigh the evidence. [ECF No. 23].

For the reasons discussed below, the Undersigned rejects Marrero's arguments and finds merit in the Commissioner's position.

### A.     The ALJ's Assessment of Listing 4.11's Criteria is Sufficient

Marrero claims that the ALJ erred by "never specifically address[ing] [Listing 4.11] as required." [ECF No. 22]. According to Marrero, the ALJ's "general finding [that Marrero did not satisfy 4.00, *et seq.*]" was "deficient as a matter of law." *Id.* Marrero says that this error was not harmless, "as the record documents that Listing 4.11, pertaining to venous insufficiency, was likely met or equaled in this case." *Id.* The Commissioner disagrees with both contentions and says that the ALJ was not *required* to specifically reference Listing 4.11 and Marrero has not even met his burden to establish the entry level criteria for a disability finding under the listing. [ECF No. 23].

Marrero is correct that the ALJ did not specifically reference Listing 4.11 in her decision. He says that this is problematic, in part, because his hearing counsel specifically argued to the ALJ that Listing 4.11 applied. [ECF No. 22 (citing (R. 77; 380))].

To fully address Marrero's argument, a review of Listing 4.11 is necessary. To qualify as disabled under Listing 4.11, a claimant must establish:

Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:

A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.

OR

B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Marrero says that because it is undisputed that his severe impairments include "varicose veins in both lower extremities and venous insufficiency, and that he had at least three ulcers on his bilateral legs which were removed surgically . . . the ALJ was required to reference Listing 4.11." [ECF No. 22]. Although the Commissioner does not dispute that Listing 4.11 was implicated based on Marrero's medical history, she argues that the ALJ's statement that she considered all cardiovascular listings -- which would necessarily include Listing 4.11 -- was sufficient, given her robust discussion of Marrero's cardiovascular-related medical history. [ECF No. 23].

For context, in denying Marrero's claim, the ALJ stated:

The undersigned has carefully reviewed the medical record against the listings in Appendix 1, and determined that the claimant's impairments do not satisfy the requirements. Specifically, the severity of her [sic] physical

impairments, considered singly and in combination, do not meet nor medically equal the criteria of Cardiovascular System section 4.00 *et seq.*

(R. 21). Following this statement, in her step four analysis, the ALJ thoroughly examined Marrero's medical records, including noting the presence and absence of certain vascular medical conditions.

According to Marrero, this is insufficient. He cites to three out-of-circuit decisions in support of his argument that the ALJ's failure to explicitly mention Listing 4.11 constitutes reversible error: *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); and *Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986). In each of these decisions, the appellate court remanded the case back to the ALJ based, in part, on the ALJ's conclusory analysis of the claimant's impairments. However, of these decisions, only *Cook* potentially supports Marrero's position.

The *Burnett* and *Clifton* ALJs' discussions were much more limited than the discussion about which Marrero complains. In *Burnett*, this single sentence discussion was insufficient: "Although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4." 220 F.3d at 119 (alterations in original). Likewise, in *Clifton*, the Tenth Circuit found error because "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or

Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." 79 F.3d at 1007. These limited, single-sentence discussions are not comparable to the ALJ's discussion in the instant case.

The statement in *Cook*, however, was more detailed than the one in either *Burnett* **or** *Clifton*. The *Cook* ALJ stated:

> An examination and x-rays of the right hip and left shoulder in May 1983 established the existence of severe osteoarthritis with moderate to severe limitation of motion of the claimant's shoulders, elbows, wrists, knees, hips, neck, and back as well as markedly decreased grip. However, the claimant's arthritis impairment does not meet or equal in severity the requirements of Section 1.01 of Appendix 1, Subpart P as there is no joint enlargement, deformity, effusion, or the other mandated criteria.

783 F.2d at 1172-73.

Although the final sentence in *Cook* mirrors the ALJ's statement concerning Marrero, the *Cook* Court remanded the matter due to additional issues which are not present in Marrero's case. Specifically, the *Cook* ALJ's analysis was found to be lacking for three reasons: (1) the ALJ did not consider examination of joints outside of the right hip and left shoulder (even though Cook's medical records documented issues with other joints); (2) it did not identify which listing was considered relevant; and (3) the use of the term "other mandated criteria" implied that the ALJ did not believe the claimant satisfied a single criterion, which, due to the uncontradicted medical records, was "patently wrong." *Id.* at 1173. Marrero has not argued that either the first or third deficiency exist in this case.

The Commissioner argues this Court should not rely on Marrero's out-of-circuit decisions and should, instead, follow the guidance of two unpublished Eleventh Circuit decisions which she claims support her stance that the ALJ's discussion was sufficient: *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 971 (11th Cir. 2014) and *Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011). As discussed below, both of these cases share much more in common with the instant case than the decisions upon which Marrero relies.

In response to an argument similar to Marrero's concerning the insufficiency of a Listing discussion, the *Prince* Court stated:

> To the extent Prince argues that the ALJ failed to make detailed findings or explicitly discuss whether her impairments met or equaled Listing 4.04C, this argument is meritless. The ALJ's conclusion that Prince did not meet that specific listing can be implied from the ALJ's discussion of Prince's medical evidence relating to her coronary artery disease and his general conclusion that Prince did not meet any medical listing. *See* [*Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)] (noting that the ALJ does not need to mechanically recite all the evidence in the record that supports a conclusion).

551 F. App'x at 971.

Similarly, in a more-abstract discussion on duties of an ALJ, the Eleventh Circuit concluded that, "[a]lthough the ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination. A finding that a claimant's impairments are not contained in the Listings may be implied

from the ALJ's decision." *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011) (internal citations omitted).

Marrero's cases originate outside this circuit and opine on situations dissimilar from the current case in many key aspects. In contrast, the Eleventh Circuit decisions cited by the Commissioner, although unpublished and not binding, deal with circumstances comparable to the instant matter.

Although it might be better practice for an ALJ to specifically refer to distinct listings in all decisions, it is not a *requirement*. *Eubanks-Glades v. Colvin*, No. 13-60029-CIV, 2013 WL 12104893, at *12 (S.D. Fla. Nov. 5, 2013), report and recommendation adopted, No. 13-60029-CIV, 2013 WL 6116810 (S.D. Fla. Nov. 20, 2013) ("'[T]here is no particular language or format that an ALJ must use in his or her analysis as long as there is sufficient development of the record and explanation of findings to permit meaningful judicial review.'" (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Here, the totality of the ALJ's decision gives ample information for the Court to understand and evaluate her reasoning. Because the ALJ's reasoning indicates that she considered the requirements of Listing 4.11, there is no reversible error based on her decision to not specifically reference the listing.

Marrero makes a second argument, titled: "[The ALJ's failure to specifically reference Listing 4.11] is not harmless, as the record documents that Listing 4.11, pertaining to venous insufficiency, was likely met or equaled in this case." [ECF No. 22].

In this section, Marrero focuses almost exclusively on medical records which he claims establish that Listing 4.11B, concerning the duration and character of ulcers, was met. In her motion/response, the Commissioner contends that Marrero's argument is not well taken because (1) Marrero cannot establish "chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system," which is a prerequisite to reaching the ulcer issue; and (2) even if he could meet the earlier requirements, his ulcers were not of sufficient character and duration.

Although the Undersigned has already rejected Marrero's argument on whether the ALJ was required to specifically reference Listing 4.11, I will still address the merits of whether this (non-existent) error was harmful.

Marrero contends that he "likely" met or equaled Listing 4.11's disability criteria based 4.11B. [ECF Nos. 22; 26]. As noted previously, in order to qualify as disabled under this provision, Marrero must establish that he has (1) "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system **and** . . . [(2)] [s]uperficial varicosities, stasis dermatitis, and **either** recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Marrero argues satisfaction of the second criterion based on recurrent or persistent ulceration. [ECF Nos. 22; 26].

In the Commissioner's view, this Court need not reach Marrero's ulcer argument because there is no evidence establishing either "incompetency or obstruction of the deep

venous system." [ECF No. 23]. As support, the Commissioner notes that the ALJ recognized on multiple occasions that there was no evidence that Marrero suffered from deep vein thrombosis ("DVT"). *Id.* (citing (R. 25-26, 28-29)). This conclusion, the Commissioner says, is supported by the findings of the State agency consultants, who found that Marrero's conditions were not at listing severity (R. 88) and did not include DVT (R. 88; 117). *Id.*

Marrero titles his reply to this argument: "The Commissioner Has Misstated the Requirements of Listing 4.11 Pertaining to Chronic Venous Insufficiency." He, however, fails to identify a *misstatement*. Rather, the crux of his argument is that the Commissioner failed to *highlight* the term "or" as used in Listing 4.11, which permits a claimant to establish either incompetency of the deep venous system **or** obstruction of the deep venous system. [ECF No. 26]. Although the Commissioner did not *emphasize* this alternative-linking word, she did not *omit* the term from her definition or otherwise argue that it did not exist or apply. Thus, Marrero's argument that the Commissioner has incorrectly claimed that "*both* an incompetence and obstruction must be present" [ECF No. 26 (emphasis added)] is not well taken.

When addressing the Commissioner's actual claim -- that there is insufficient evidence to establish either incompetency or obstruction of the deep venous system -- Marrero's counterargument is barebones. In his reply, Marrero states the following on the issue:

Here, the evidence documents "chronic venous insufficiency of a lower extremity with incompetency." Listing 4.11. Chronic venous insufficiency "is a long-term condition" and is "most commonly due to malfunctioning (incompetent) valves in the veins" but "may *also* occur as the result of a past blood clot in the legs." https://medlineplus.gov/ency/article /000203.htm (last visited 02/09/2022) (Emphasis added). A blood clot deep in the legs is evidence of DVT, but is not required in order to meet Listing 4.11. *See Miranda v. Berryhill*, No. 4:18-CV-00055, 2018 WL 7001904, at *6 (M.D. Pa. Dec. 4, 2018), report and recommendation adopted, No. 4:18-CV-00055, 2019 WL 162440 (M.D. Pa. Jan. 10, 2019) (Listing 4.11 was not met as it "does not indicate that she suffers from incompetency or obstruction of the deep venous system *or* brawny edema") (Emphasis added).

[ECF No. 26].

Marrero's argument is devoid of any reference to his medical records, the administrative record, or any legal authority to contradict the Commissioner's actual position. By responding to the Commissioner's well-reasoned argument in such a perfunctory manner, Marrero has forfeited the issue. *See, e.g., Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-CIV, 2022 WL 1447733, at *31 (S.D. Fla. May 9, 2022) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001))); *Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 F. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*,

138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh v. U.S. Atty. Gen*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.")).

Regardless, even if Marrero had properly addressed the issue, the Commissioner also prevails in a merit-based analysis. Multiple courts have affirmed an ALJ's decision that a claimant failed to establish "incompetency or obstruction of the deep venous system" when there was no evidence of DVT. *See, e.g., Lamond v. Astrue*, 440 F. App'x 17, 21 (2d Cir. 2011) (affirming ALJ's decision that Listing 4.11 did not apply, in part, because there was no evidence of deep vein thrombosis); *Washington v. Colvin*, No. CIV.A. 12-6970, 2014 WL 6070836, at *2 (E.D. Pa. Nov. 14, 2014) ("Although plaintiff did come forward with some objective evidence of the existence of varicosities in his lower left leg during the relevant time period, the ALJ determined that, notwithstanding the existence of those varicosities, plaintiff failed to satisfy Listing 4.11 because there was no evidence of 'incompetency or obstruction of the deep venous system.' Specifically, the ALJ noted that 'a series of ultrasound studies showed no evidence of acute deep vein thrombosis or

other blockages in the lower extremities.'") (internal citations to the record omitted));

*Frierson v. Saul*, No. 519CV00166FDWDSC, 2020 WL 9848709, at *2 (W.D.N.C. July 22, 2020), report and recommendation adopted as modified, No. 519CV00166FDWDSC, 2020 WL 5110702 (W.D.N.C. Aug. 31, 2020) (affirming ALJ's decision that the claimant did not meet 4.11's requirements, in part, because there was no evidence of deep vein thrombosis).

Because Marrero has failed to establish that he meets the preliminary criteria required to qualify for disability under Listing 4.11, whether his ulcers satisfy 4.11B is immaterial.[4] At bottom, the ALJ's decision is sufficiently detailed to establish that

---

[4]     Both parties addressed in their briefing whether Marrero's ulcers satisfied Listing 4.11B. Despite the fact the Listing 4.11B requires only "recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment," the Commissioner urges that Marrero must still establish that the impairment lasted or was expected to last for a continuous period of at least twelve months under 20 C.F.R. §§ 404.1509, 416.909. This argument is foreclosed by the ALJ's findings.

As Marrero correctly notes in his reply, the ALJ's decision concludes that Marrero met the durational requirement. In her step two discussion, the ALJ stated that Marrero had the following serve impairments: "varicose veins in both lower extremities; venous insufficiency; hypertension; unspecified bipolar disorder; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c))." (R. 20). Both regulations which the ALJ cites specifically reference the twelve-month durational requirement. If Marrero had not met the durational element, then the ALJ would not have cited those provisions when discussing Marrero's impairments.

Accordingly, if the Undersigned had determined that Marrero established the preliminary criteria, then I would also find that Listing 4.11B had been established.

Marrero does not meet the requirements for disability under 4.11. Therefore, there is no basis for remand on this issue.

**B.**   ***The ALJ Did Not Err by Finding ARNP Vasquez's Opinion Unpersuasive and Not Supported by Substantial Evidence***

The ALJ stated the following concerning ARNP Vasquez:

> The undersigned is unpersuaded by NP Elizabeth Vasquez who, on May 13, 2020, in summary, opined the claimant could not work at the light or sedentary exertional levels; was required to elevate his legs; and would be absent for 5 or more days a month (Ex. 13F). The opinion is unpersuasive because it is inherently inconsistent in that NP Vasquez also stated that the claimant became symptomatic with moderate exertion; had only moderate limitation in full-time work restrictions; and was still able to function satisfactorily. It is also unpersuasive because it is unclear whether she actually examined the claimant (clinical notes show the name "Elizabeth Vazquez Serrano." The opinion is additionally inconsistent with and unsupported by the totality of the evidence, as described above (Ex. 1E; Ex. 10E; Ex. 1F; Ex. 3F; Ex. 4F; Ex. 5F; Ex. 6F; Ex. 7F; Ex. 9F; Ex. 14F; Ex. 15F; Ex. 16F; Ex. 17F; Hearing Testimony).

(R. 29) (emphasis in original).

Marrero takes issue with the portion of the ALJ's conclusion in which she says that it is unclear whether Elizabeth Vasquez actually examined Marrero. Next, he alleges that the ALJ's assessment of the record evidence is improperly selective and replete with misstatements. The Undersigned will address each of these arguments in turn.

In his initial brief, Marrero misunderstands the ALJ's concern over whether the Vasquez who offered the opinion is the same as the Vazquez who treated him. Indeed, in his quote from the ALJ's decision, Marrero improperly corrects the second spelling of Vazquez so that the difference in spelling is no longer present. [ECF No. 22, p. 18]. The

Commissioner highlights this issue in her response, noting that it was unlikely that the name would be repeatedly misspelled in the treatment notes (which use the name "Vazquez") or that the ARNP who wrote the opinion at issue would misspell her own name (which she handwrote as "Vasquez"). [ECF No. 23]. Marrero argues in reply that this is a typographical mistake and that multiple facts confirm his position.

As one of his confirmatory examples, Marrero says that a comparison of the signatures reveals that they are identical. This simply is not true. A comparison of the signatures reveals multiple, easily-discernable dissimilarities. *Compare* (R. 570) *with* (R. 577). As a second example, Marrero says that the treatment date provided on the opinion form matches one of the treatment dates in the Vazquez records. *Compare* (R. 566) *with* (R.582-84). Although there is definitively one overlapping treatment date, this does not conclusively establish that "Vasquez" and "Vazquez" are the same person. The Court must not "reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210. Because there is evidence which supports the ALJ's concern, there is no basis to find that the ALJ erred in her conclusion on this issue.

Marrero also claims that the ALJ selectively cited record evidence in reaching her conclusion that ARNP Vazquez's opinion is "inconsistent with and unsupported by the totality of the evidence." [ECF No. 22]. However, the examples of errors Marrero provides fail to support his position.

Marrero first focuses on this passage of the ALJ's decision: "[Marrero] was advised to elevate his legs shortly before both surgeries; however, contrary to his testimony, it was either only at night or for a total of 45 minutes a day." (R. 28). Marrero claims that this statement fails to recognize that he was told on multiple occasions to elevate his legs, not just before his surgeries. However, the allegedly additional records that Marrero claims the ALJ did not consider do not contradict the ALJ's statement. In each of those records, Marrero is either told to elevate his legs, elevate his legs at night, or elevate his legs for 45 minutes a day. Moreover, the ALJ explicitly references some of the records which Marrero says she did not consider. (R. 25) (referring to the October 2018 leg elevation instruction). At bottom, the record does not reflect a selective or unsupported opinion on this issue.

Marrero also takes issue with the ALJ's statement that there was "no evidence [Marrero] ever presented at a visit with a cane." Although this statement by the ALJ is factually incorrect (because Marrero was noted with a cane during *one* doctor's appointment within a few weeks of his first surgery (R. 619)), it does not undermine the ALJ's ultimate conclusion. As noted by the ALJ (R. 25-28), multiple records reflected that Marrero presented normal gait or was able to ambulate/walk independently. (R. 472, 476, 505, 507, 509, 547, 550, 553, 556, 559, 562, 597, 599, 606, 616, 625, 630, 661, 686, 697, 716, 738). One instance of Marrero using a cane is insufficient to undermine the totality of the evidence considered by the ALJ.

In another paragraph, Marrero challenges the ALJ's determination that in the year and a half period between Marrero's two surgeries "multiple diagnostic tests [were] unremarkable" and "interim examinations were consistently generally benign." [ECF No. 22 (citing (R. 28-29))]. As support, Marrero cites *one* examination where Marrero presented with symptoms. Again, this singular record does not undermine approximately a year and a half of treatment records reflecting generally benign examinations.

Marrero also says that there is objective evidence which undermines the ALJ's finding that Marrero's interim examinations were consistently generally benign. He directs the Court's attention to an August 1, 2019 exam (which concluded there was "evidence of venous insufficiency") and an April 10, 2020 exam (which concluded there was "severe superficial venous insufficiency"). [ECF No. 22 (citing (R. 644; 651))]. Neither record sufficiently undermines the ALJ's rationale.

The August 1, 2019 exam is unclear. Although it states in the conclusion section that there is "evidence of venous insufficiency," it also states in the "findings" section that there is "[n]o evidence of venous insufficiency or venous thrombosis." (R. 644). Further, the April 10, 2020 exam was considered by the ALJ. (R. 26). Earlier in her discussion, the ALJ acknowledged that "[i]n April 2020, over 1 year after his left leg surgery, the claimant presented with a right leg varicose veins and an ulcer . . . [and] [t]he

ulcer subsequently started to bleed and a lower extremities ultrasound revealed severe superficial venous insufficiency with significant reflux." *Id.* (emphasis removed).

At bottom, Marrero relies on scattered and ambiguous records in an attempt to counteract the extensive corroborating medical findings which support the ALJ's conclusion. These isolated medical records are insufficient to undermine the abundant medical records documenting normal cardiovascular functioning, gait, balance, muscle strength, and tone. (R. 389, 400, 445, 452, 466, 472, 476, 590, 597, 594, 599, 606, 611, 615-16, 625, 629-30, 633, 661, 666, 672, 677, 680, 686, 690, 695, 697, 701, 743).

As his final challenge, Marrero says that the ALJ's consideration of Marrero's ability to complete daily activities ignored many of the qualifying statements Marrero gave when describing his daily activities to medical providers. The ALJ's decision contains the following discussion of Marrero's daily activities:

> Moreover, mental and physical symptoms notwithstanding, the claimant reported he had no difficulties with memory, concentration, paying attention, following instructions, completing tasks, and getting along with others. His continued engagement in a variety of ADLs including independent personal hygiene and grooming, doing laundry, driving, riding a bicycle for 1 mile at least 5 days a week, using public transportation, shopping, attending and organizing daily AA meetings, managing his own finances, and watching television, further belie the degree of severity alleged. 8D; Ex. 1E; Ex. 10E; Ex. 1F; Ex. 3F; Ex. 4F; Ex. 5F; Ex. 6F; Ex. 7F; Ex. 9F; Ex. 14F; Ex. 15F; Ex. 16F; Ex. 17F

(R. 28).

According to Marrero, this characterization is misleading because various medical records indicate that completing these activities is very hard on Marrero and often causes

him pain or shortness of breath. Marrero also claims that the record contains only a single reference to him riding a bike to his AA meetings (so the ALJ's finding that he rode a bike 5 days a week is unsupported by the evidence).

In addition to equating Marrero's argument as a request for this Court to reweigh the evidence, the Commissioner also points out that (other than the bike riding) these activities appear to be listed for the purpose of addressing Marrero's mental symptoms. [ECF No. 23]. She further argues that Marrero was represented by an attorney during the proceedings and should have brought out testimony meant to address why this type of information should no longer be considered.

Although there is evidence which seemingly contradicts the ALJ's assessment of Marrero's daily activities, this evidence is insufficient to find that the ALJ's evaluation of ARNP Vasquez's opinion is unsupported by substantial evidence. In addition to records which contain references to Marrero performing daily activities unencumbered, (R. 423 ("He reported that he completes all his daily living activities without assistance), multiple records also note that Marrero denied suffering from shortness of breath and pain. (R. 474-75; 481-83; 504; 572; 717-18). It also appears that Marrero forgets the date on which he claims he became disabled. While the note about the bike riding was made only once and was made well before the hearing, it was made during a time in which Marrero is claiming that he was too disabled to work. (R. 465 (reporting on December 7, 2018 that he

rides a bike one mile to his AA meetings)). Thus, it was an important fact for the ALJ to consider.

In summary, the factors the ALJ considered are not inappropriate and the ALJ did not make any meaningful mistakes in her summary of the evidence. As the Commissioner correctly notes, Marrero's arguments are merely "a disguised request for this Court to reweigh the evidence." [ECF No. 23]. This type of review is impermissible.

The Court must affirm the ALJ's finding if it is supported by "substantial evidence," *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citation omitted), and the Court may not "reweigh the evidence, or substitute [its] judgment" for that of the ALJ even if the "evidence preponderates against the [ALJ]'s decision," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (alterations added; citation omitted). An "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Marrero argues that there is evidence which undermines the ALJ's position, but he does not meaningfully argue that there is a lack of supporting evidence. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports

her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). As discussed above, there are extensive medical records directly contradicting many of the ultimate conclusions made by ARNP Vasquez. Additionally, there is substantial evidence which supports a concern that ARNP Vasquez and ARNP Vazquez might not be the same person. Finally, the evidence about Marrero's lifestyle contradicts many of ARNP Vasquez's conclusions. Marrero's isolated, contradictory records are insufficient to undermine the ALJ's thoroughly supported rationale.

Therefore, there is no basis for remand on this ground.

**C.      *The ALJ's Assessment of Marrero's Credibility is Supported by Substantial Evidence***

Marrero's final claim is that the ALJ erred by not crediting his hearing testimony. According to Marrero, the ALJ: (1) misstated Marrero's burden; (2) improperly focused on objective medical evidence; (3) selectively cited evidence in the record; and (4) improperly relied on Marrero's ability to complete daily activities. The final two arguments are identical to the similar arguments raised in Marrero's discussion concerning ARNP Vasquez.

Marrero first argues that the ALJ misstated the burden of proof by "claiming that [Marrero] must 'be unable to do any work.'" [ECF No. 22 (citing (R. 25))]. This fractured quote inaccurately reflects the ALJ's statement. The full sentence reads as follows: "A comprehensive review of the entire claim file does not indicate that the claimant's impairments are as severe as alleged or that he is unable to do any work." (R. 25). This is

a far cry from a claim that the ALJ required Marrero to prove that he is unable to do any work. Rather, it serves merely as an *introductory sentence* to the section discussing why many of Marrero's statements concerning the intensity, persistence, and limiting effects of his symptoms were unsupported by the record evidence.

As an additional reason to reject this argument, Marrero cites no law. Instead, he refers to the sedentary grid, which he claims would support finding Marrero disabled. [ECF No. 22 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14)]. However, the ALJ found that Marrero could perform *light* work, (R. 24), which means that the sedentary grid is wholly inapplicable. *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) ("The regulations define sedentary work as 'involving lifting no more than 10 pounds at a time' and 'walking and standing are required [only] occasionally.' SSR 83–10. Light work, on the other hand, is defined as 'lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds,' and that 'a good deal of walking or standing' is required." (alterations in original)).

Marrero's next argument concerning the ALJ's alleged improper focus on objective medical evidence also fails. Marrero begins by stating that the "ALJ's focus on objective medical evidence was improper." [ECF No. 22]. Next, Marrero says that SSR 16-3p "does not permit an ALJ to unfavorably evaluate an individual's symptoms based solely on objective medical evidence." Marrero's characterization of both the ALJ's reasoning and the content of SSR 16-3p is inaccurate.

It is clear from the ALJ's decision that she considered the objective medical evidence, Marrero's statements to medical professionals (e.g., what was Marrero's pain level or what kind of activities could Marrero perform), and the observations of medical professionals (e.g., whether Marrero was using a cane). Thus, she did not reject Marrero's testimony based solely on objective medical evidence.

Moreover, SSR 16-3p is not as restrictive as Marrero alleges. SSR 16-3p states that, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2016 WL 1020935 (2016). Read correctly, this ruling prohibits an ALJ from rejecting a claimant's testimony solely because the objective medical evidence does not corroborate it; however, it does nothing to prevent an ALJ from rejecting testimony that is contradicted by objective medical evidence.

Marrero's final two arguments cite to his previous briefing on these issues as applied to the ALJ's consideration of ARNP Vasquez's opinion. He offers no fresh argument on either topic. Therefore, for the same reasons the Undersigned rejected the arguments as applied to ARNP Vasquez, the Undersigned rejects them here.

In summary, the ALJ's decision to discredit Marrero's subjective complaints is supported by substantial evidence. An ALJ is permitted to discredit a claimant's allegations of completely disabling symptoms, provided that the ALJ "articulate[s]

explicit and adequate reasons" for so doing. *Dyer*, 395 F.3d at 1210. "The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ's reasons for discounting Marrero's testimony were plenary and she was not clearly wrong in finding that Marrero's self-serving statements lacked support and were, in fact, contradicted by earlier statements and the objective medical treatment records. *Maddy v. Berryhill*, No. 17-80150, 2018 WL 1863610, at *4 (S.D. Fla. Mar. 23, 2018) (holding it was appropriate for ALJ to discount claimant's statements when it was inconsistent with the claimant's conservative treatment, intermittent reports of pain, and noted improvement in some areas with treatment).

For these reasons, there is no basis for remand on this issue.

## VI.    Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Marrero's summary judgment motion, **grant** the Commissioner's summary judgment motion, and enter final judgment in favor of the Commissioner.

## VII.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the

District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, Miami, Florida, on September 29, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola
All counsel of record